Dear Mayor Choate:
Our office is in receipt of your request for an Attorney General's Opinion regarding whether the Village of Simsboro may drill a water well and place a water tank in the center of a dedicated but unused road bed. According to information provided by Danny W. Tatum, City Attorney for the Town of Simsboro, in the conveyance records of Lincoln Parish, Notarial Book B, Page 310, under date of February 16, 1884, the founder of Simsboro dedicated the roads with the following language:
 She now attaches hereto said plat of the Town of Simsboro and hereby dedicates all the streets as numbered and named thereon to the use of the public forever.
While many of the roads on the plat were improved and have been used by the public as roads, a few have never been improved or used as roadways. The proposed placement of the water well and water tank is at the intersection of One Street North and Rueben Street. Neither One Street North nor that part of Rueben Street have ever been improved, maintained, or used as public roads. They are not marked in any manner and are located in the middle of unimproved land. Rueben Street intersects with Braswell Lane, an improved road, in one direction and becomes improved in the other direction approximately 300 feet from its intersection with One Street North. One Street North intersects with improved streets in both directions from its intersection with Rueben Street.
The water well and water tank are to be operated by the Village to provide water to the Village of Simsboro, thereby providing a public use. The area around the water tank would be fenced and gated with the public being excluded therefrom. The area would block approximately one hundred-fifty feet of Rueben Street at its intersection with One Street North, completely blocking the intersection. It will remove the intersection and, in effect, create four dead end streets. An access road to the water tower would be constructed on Reuben Street off Braswell Lane. It is our understanding that this access lane would be accessible to the public. Other than the area enclosed by the water tower and construction of the access road, the rest of the area would remain as it exists today: dedicated but unused road bed.
No statutes addressed the status of dedications until at least 1825, with the passage of what is now Civil Code Art. 658, which addresses the servitude resulting from the implied or common law dedication. The system of formal or statutory dedication began with the passage of Act 134 of 1896 (LSA-R.S. 33:5051) which provides for the filing of the plat with the streets and roads described and the formal dedication language incorporated therewith. When dealing with subdivisions created prior to the enactment of Act 134 of 1896, the courts have held that the sale of lots in accordance with the plat constitutes an irrevocable dedication to the public of the streets and roads indicated on the plat. The facts you presented support the position that the streets in question were formally dedicated to the Village and therefore out of commerce.
Several statutes provide with regard to the dedication of streets as well as the circumstances and the procedure for undedicating roads which are no longer needed for use by the public as roadways. See La. R.S. 33:4717, R.S. 33:5051, R.S. 48:491, R.S.48:701. In the present instance, the Village of Simsboro is not attempting to undedicate any roads, but rather is attempting to use a small portion of one of the dedicated roads for another use incompatible with its use as a roadway.
The Louisiana Supreme Court, when addressing this issue, has looked to the facts of each case to determine whether an incompatible use will substantially interfere with the use of property as dedicated. For example, City of Shreveport v. Cahn,194 La. 55, 193 So. 461 (1939) concerned property dedicated by the City of Shreveport to be used for park purposes only. The property was used for park purposes, open to the general public at large, for over 25 years when the City of Shreveport proposed to grant a mineral lease over the park property. The Court found generally that dedications made by individuals must be construed strictly according to the terms of the dedication and that the use of the property could not be changed where it would substantially interfere with the purpose for which the property was dedicated. The proposed mineral lease specifically provided that the lessee not interfere with the use of the property for park purposes. Additionally, the lease required that each well and tank battery be enclosed by fencing. Based upon these provisions of the lease and the fact that only a very small portion of the park would be required for the mineral development, the Court found that mineral activities would not substantially interfere with the use of the property for park purposes and therefore not violate the dedication.
Alternatively, in Anderson v. Thomas, 166 La. 512, 117 So. 573
(1928), the City of Shreveport sought to erect a public auditorium on a ten acre lot used for more than fifty years as a public park. The Court found that the building, including walkways, driveways, and terraces would encompass almost the entire park area. While the public auditorium would be for a public use, it was only quasi public in nature. It would be let for hire allowing musical and other entertainment events to be given in which an admission is charged and which excludes the general public. Additionally other events would be held by various orders, organizations, and associations which are of interest only to their members. The Supreme Court found that use of the property as an auditorium was incompatible with its use as a public park. The Court stated:
 The question of whether or not the erection of an auditorium would destroy the property for park purposes is one of fact. The metropolitan museum in Central Park, New York does not seriously interfere with its use as park because of its relative size.
 An auditorium erected on a large track like the fairgrounds would have a far different effect than the same auditorium erected on one city block.
 * * *
 . . . we find as a matter of fact that the character of the lot will be changed from a public park to a public square dominated by a public building differing but slightly in comparative dimensions from the public square. . . .
Anderson v. Thomas, 166 La. at 522, 117 So. at 578.
The Court went on to find that the erection of the auditorium of the size proposed was inconsistent with its use a park and would destroy the public's ability to use the park for park purposes.
We believe that a water well and water tower, fenced off from public access, constitutes an incompatible use with the dedicated but unused road beds. Therefore, the determination turns on whether this incompatible use substantially interferes with the use of the road bed by the public. The area enclosed by the water well and water tower will block off only a small portion of Rueben Street at its intersection with One Street North. It is our understanding that there will be continued access to all existing blocks bordering Reuben Street and One Street North, even though passage through the intersection will be eliminated. Access will be by Reuben Street or One Street North from their intersections with improved roads at the opposite ends from the intersection.
As stated by the Louisiana Supreme Court, the determination of whether an incompatible use will violate the dedication is a question of fact. Anderson v. Thomas, 166 La. 512, 117 So. 573
(1928). Pursuant to our policy, we will not issue opinions on questions of fact. This opinion provides you with the legal considerations which we believe will help the Village of Simsboro determine whether the water well and water tower will substantially interfere with the use of the property as dedicated and result in a violation of the dedication. Should the Village determine that drilling the water well and building the water tower to be operated by the Village of Simsboro, fenced off from public access, will not substantially interfere with the use of the roadbed by the public, then the Village may drill the well and place the water tower on the property without violating the dedication. In the event that the blocking of Reuben Street and One Street North does result in violating the dedication, then pursuant to the statutory provisions identified above, the adjacent property owners or the descendants in title of the person who dedicated may have a claim of ownership over the property. In that event the Village may have to find an alternative location for the water well and water tower or resort to using its power of eminent domain and institute proceedings to expropriate the property.
We trust that the foregoing has been helpful. Should you have any further question please contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________ Frederick C. Whitrock Assistant Attorney General
RPI/FCW/tp
c.c. Danny W. Tatum City Attorney for the Town of Simsboro